No. 23-55737

# In the United States Court of Appeals For the Ninth Circuit

Robert Platt, individually and on behalf of all others similarly situated,
Plaintiff-Appellee

v.

Sodexo, S.A. and Sodexo, Inc.,
Defendants-Appellants

_____

On Appeal from the United States District Court for the Central
District of California (Southern Division)
No. 8:22-cv-02211-DOC-ADC
(The Honorable David O. Carter)

_____

## PLAINTIFF-APPELLEE'S ANSWERING BRIEF

George A. Hanson
Alexander T. Ricke
Caleb Wagner
Yasmin Zainulbhai
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: 816-714-7100

Jason L. Hartley
HARTLEY LLP
101 W. Broadway, Suite 820
Sand Diego, CA 92101
Tel: 619-400-5822

_Attorneys for Plaintiff – Appellee_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 4

ISSUES PRESENTED ..................................................................... 4

STATEMENT OF THE CASE ........................................................... 5

I.      Platt Files Suit Against Sodexo Due to Its Unlawful Nicotine
        Surcharge ......................................................................... 7

        A.      Platt never agreed to arbitrate his ERISA claims. .............. 10

        B.      Platt opposes Sodexo's motion to compel arbitration. ........... 13

II.     The District Court Denies Sodexo's Motion to
        Compel Arbitration ............................................................ 14

STANDARD OF REVIEW ................................................................ 16

SUMMARY OF THE ARGUMENT ....................................................... 17

ARGUMENT ................................................................................ 19

I.      ERISA Does Not Supersede the FAA's Requirement
        of Contractual Consent to Arbitrate .............................................. 19

        A.      There is no "ERISA exception" to the FAA's
                requirement for a consensual contract. ................................ 21

                1.      ERISA's plain text precludes Sodexo's expansive
                        reading of its right to amend plan terms ..................... 22

                2.      Sodexo cites no case finding that ERISA abrogates
                        the FAA's requirement of consent to arbitrate. .......... 25

II.     Sodexo Did Not Secure Platt's Consent to Arbitrate ..................... 29

A.    Platt did not manifest assent and thus there was no contract. ............................................................. 30

        1.    The district court's factual findings were not clearly erroneous. ....................................... 31

        2.    Platt took no outward action indicating his agreement to be bound to a contract. ....................... 33

        3.    Platt's continued participation in the Plan was not consent. ........................................... 35

        4.    The Plan's "consent" is no substitute for Platt's. ........ 36

III.    The Effective Vindication Doctrine Prohibits Enforcement of Sodexo's Representative Action Waiver ........................................ 42

    A.    ERISA grants participants the right to represent the plan to recover its losses. ................................ 44

    B.    Sodexo's arbitration provision impermissibly constrains participants' statutory right to recover all plan losses in a representative action. .................................... 46

    C.    This Court's sister circuits have refused to enforce arbitration provisions that would similarly obstruct the right to obtain plan-wide relief. ...................................... 48

    D.    *Dorman II* does not compel a different result. .................... 54

IV.    Sodexo's Arbitration Provision is Unconscionable or Otherwise Legally Invalid in Multiple Respects and is Therefore Unenforceable. ........................................... 58

    A.    Unconscionability defenses apply to Sodexo's arbitration provision. ........................................... 58

    B.    Sodexo's arbitration provision is permeated with unconscionable terms and cannot be enforced. .................... 60

      1.    Sodexo's arbitration provision contains multiple substantively unconscionable terms.............................61

      2.    The unconscionable provisions permeate the agreement and are not severable.................................63

V.    Platt's Claim for Benefits Under ERISA § 502(a)(2) is Expressly Carved Out of Sodexo's Arbitration Provision, and Therefore Cannot Be Compelled to Arbitration .............................................65

CONCLUSION ...........................................................................68

CERTIFICATE OF SERVICE..................................................69

# TABLE OF AUTHORITIES

## Cases

*Adams v. Avondale Indus. Inc.*,
   905 F.2d 943 (6th Cir. 1990) .............................................................. 21

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ................................................................ 7, 8, 10

*Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*,
   627 F.2d 272 (D.C. Cir. 1980)............................................................ 23

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) .................................................................. *passim*

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ............................................................... 60, 61

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ...................................................................... 19

*Avecilla v. Live Nation Ent., Inc.*,
   2023 WL 5354401 (C.D. Cal. Aug. 7, 2023) .................................. 56, 59

*Berman v. Freedom Fin. Network,
   Inc.,* 30 F.4th 849 (9th Cir. 2022)....................................... 17, 30, 34, 36

*Burnett v. Prudent Fiduciary Servs. LLC,*
   No. CV 22-270-RGA-JLH, 2023 WL 387586
   (D. Del. Jan. 25, 2023)............................................................ 47, 50, 56

*Castillo v. Metro. Life Ins. Co.,*
   970 F.3d 1224 (9th Cir. 2020) .......................................................... 37

*Cedeno v. Argent Tr. Co.,*
   2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) ....................................... 50

*Chalk v. T-Mobile USA, Inc.,*
   560 F.3d 1087 (9th Cir. 2009) .......................................................... 62

*Chappel v. Lab. Corp. of Am.*,
232 F.3d 719 (9th Cir. 2000) .......................................................... 22, 35

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ............................................................... 37

*Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*,
302 F. Supp. 2d 1267 (D. Kan. 2004) ................................................... 38

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .................................................................. 50

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) .......................................................................... 21, 26

*DeLeon v. Verizon Wireless, LLC*,
207 Cal. App. 4th 800 (2012) ............................................................... 31

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996) .............................................................................. 59

*Dorman v. Charles Schwab Corp.*,
780 F. App'x 510 (9th Cir. 2019) ...................................... 35, 53, 54, 55

*Dorman v. Charles Schwab Corp.*,
934 F.3d 1107 (9th Cir. 2019) .............................................................. 54

*Duke v. Luxottica U.S. Holdings Corp.*,
2023 WL 6385389 (E.D.N.Y. Sept. 30, 2023) ...................................... 66

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002) .............................................................................. 65

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........................................................................ 23, 24

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................. 29

*Forsyth v. Humana, Inc.*,
114 F.3d 1467 (9th Cir. 1997) .............................................................. 67

*Graham Oil Co. v. ARCO Prod. Co., a Div. of Atl. Richfield Co.*,
43 F.3d 1244 (9th Cir. 1994) ............................................................... 42

*Granite Rock Co. v. Teamsters*,
561 U.S. 287 (2010) ............................................................................. 19

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
59 F.4th 1090 (10th Cir. 2023) ................................................. 18, 48, 49

*Hawkins v. Cintas*,
32 F.4th 625 (6th Cir. 2022) ............................................. 39, 50, 53, 56

*Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*,
443 F.3d 1330 (11th Cir. 2006) ........................................................... 67

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*,
2021 WL 4133622 (D. Del. Sept. 10, 2021) ........................................ 27

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*,
72 F.4th 499 (3d Cir. 2023) ........................................................... 18, 49

*Hensiek v. Bd. of Directors of Casino Queen Holding Co., Inc.*,
514 F. Supp. 3d 1045 (S.D. Ill. 2021) ................................................. 27

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ....................................................................... 21, 26

*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*,
520 U.S. 510 (1997) ............................................................................. 25

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................................................... 35, 66

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ................................................... 29, 31, 66

*Kramer v. Smith Barney*,
80 F.3d 1080 (5th Cir. 1996) ............................................................... 61

vi

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
    552 U.S. 248 (2008) ........................................................ 45, 46, 52, 55

*Lim v. TForce Logistics, LLC,*
    8 F.4th 992 (9th Cir. 2021) ................................................ 18, 58, 63, 64

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996) ...................................................................... 21, 26

*Lopez v. Dave, Inc.,*
    No. 22-16915, 2023 WL 8594393 (9th Cir. Dec. 12, 2023) .................. 34

*MacClelland v. Cellco P'ship,*
    609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................... 64, 65

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985) ................................................... 17, 45, 46, 51, 52

*Mathews v. Sears Pension Plan,*
    144 F.3d 461 (7th Cir. 1998) ............................................................. 26

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    472 U.S. 614 (1985) ........................................................................... 42

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ........................................................................... 65

*Mull v. Motion Picture Indus. Health Plan,*
    41 F.4th 1120 (9th Cir. 2022) ............................................................ 59

*Munro v. Univ. of S. California,*
    896 F.3d 1088 (9th Cir. 2018) ..................................................... passim

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ..................................................... passim

*Norcia v. Samsung Telecomms. Am., LLC,*
    845 F.3d 1279 (9th Cir. 2017) ...................................................... 15, 29

*Perez v. DirecTV Grp. Holdings, LLC,*
    251 F. Supp. 3d 1328 (C.D. Cal. 2017) .......................................... 66, 67

vii

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
946 F.3d 1100 (9th Cir. 2020) ............................................................ 41

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) ............................................................ 30

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) ............................................................ 32

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ............................................................ 62, 63

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
673 F.3d 221 (3d Cir. 2012) ............................................................ 62

*Robertson v. Argent Tr. Co.*,
2022 WL 2967710 (D. Ariz. July 27, 2022) ................................... 56, 59

*Shepard v. Quillen*,
840 F.3d 686 (9th Cir. 2016) ............................................................ 16, 41

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
13 F.4th 613 (7th Cir. 2021) ............................................................ 50

*Smith v. Med. Benefit Administrators Grp., Inc.*,
639 F.3d 277 (7th Cir. 2011) ............................................................ 55

*Solis v. Matheson*,
563 F.3d 425 (9th Cir. 2009) ............................................................ 39

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ............................................................ 1, 19

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022) ............................................................ 29

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ............................................................ 16

*United States v. Nat'l Steel Corp.*,
75 F.3d 1146 (7th Cir. 1996) ............................................................ 60

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996) ........................................................... 37

*Vaughn v. Bay Env't Mgmt., Inc.,*
    567 F.3d 1021 (9th Cir. 2009) ........................................... 55

*Viking River Cruises, Inc. v. Moriana,*
    596 U.S. 639 (2022) .......................................................... 43

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior
    Univ.,*
    489 U.S. 468 (1989) .......................................................... 19

*Wheeler v. Dynamic Eng'g, Inc.,*
    62 F.3d 634 (4th Cir. 1995) .............................................. 60

*Windsor Mills, Inc. v. Collins & Aikman Corp.,*
    25 Cal. App. 3d 987 (Cal. Ct. App. 1972) .......................... 31

*Wireless Warehouse, Inc. v. Boost Mobile, LLC,*
    2010 WL 891329 (C.D. Cal. Mar. 10, 2010) ....................... 66

**Statutes**

9 U.S.C. § 2 .......................................................................... 19, 58

9 U.S.C. § 16 ............................................................................... 4

28 U.S.C. § 1331 ........................................................................ 4

28 U.S.C. § 1332 ........................................................................ 4

29 U.S.C. § 1002 ............................................................... *passim*

29 U.S.C. § 1109 ............................................................... *passim*

29 U.S.C. § 1110 ...................................................................... 44

29 U.S.C. § 1113 ...................................................................... 61

29 U.S.C. § 1132 ............................................................... *passim*

29 U.S.C. § 1144 ............................................................... *passim*

29 U.S.C. § 1182 ......................................................................... 6, 7

Cal. Civ. Code § 1670.5............................................................... 60

**Rules**

Ninth Circuit Rule 36-3................................................................ 54

**Regulations**

29 C.F.R. § 2560.503-1 .............................................................. 66

29 C.F.R. § 2590.702.................................................................... 6

**Other Authorities**

Restatement (Second) of Contracts § 19(2) (1981)................................. 30

*Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*,
78 Fed. Reg. 33158 (June 3, 2013) ........................................................ 6

## INTRODUCTION

A foundational precept of the Federal Arbitration Act ("FAA") is that arbitration is strictly a matter of consent, and that any attempt to compel arbitration must be founded upon a contractual agreement. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). While seeking to invoke the FAA, however, Defendants Sodexo S.A. and Sodexo Inc. (collectively "Sodexo") argue that they were exempt from this prerequisite to arbitration. Instead, Sodexo argues that it can enforce an arbitration provision against medical plan participant Robert Platt to which he never agreed. The district court correctly rejected this argument and declined to compel arbitration of each of Platt's four, distinct claims brought under the Employee Retirement Income Security Act ("ERISA").

Not only did Platt not affix his signature to any arbitration provision, he never clicked a button, checked a box, or took any other action whatsoever indicating his intent to be bound. Without any outward manifestation of assent, Sodexo simply has no agreement to enforce. The company tries to paper over this deficiency, citing to its allegedly "unfettered" authority as an ERISA-plan administrator to

1

unilaterally amend an ERISA plan at any time, including to add an arbitration provision. The district court properly rejected that argument, finding that an administrator's authority to unilaterally amend a welfare-benefits plan does not extend to the right to add an arbitration provision to a plan without consent. Given that the FAA has long-established that "arbitration is strictly a matter of consent" and that ERISA's text explicitly establishes that it does not modify, supersede, or abrogate any other pre-existing federal law, the district court's finding correctly harmonized these two federal statutes. This Court's analysis can thus end here, and it can affirm on the basis found by the district court.

The record, however, presents alternative bases for affirmance, each of which were fully briefed by the parties before the district court. The first basis relates to Count III, Platt's claim for breach of fiduciary duty under § 502(a) of ERISA. While ERISA grants participants and beneficiaries the right to step into the shoes of a plan in a *representative* capacity and recover all its losses resulting from the fiduciary's breach of duty, Sodexo's arbitration provision only permits a participant to proceed in an *individual* capacity. As several of this Court's sister

circuits have found, arbitration provisions that limit a plan participant's ability to recover on a plan-wide basis improperly interfere with the effective vindication of a right guaranteed by ERISA and are thus unenforceable.

Another alternative basis for affirmance relates to all four of Platt's ERISA claims: Sodexo's arbitration provision is unconscionable under California law. In addition to attempting to take away a participants' right to recover all plan losses in a representative proceeding, the company's arbitration provision purports to shorten the limitations period and remove the right to recover attorneys' fees. Each of these individual provisions is unlawful on its own. Taken together and coupled with the circumstances under which they were imposed, they infect the arbitration provision with such pervasive unconscionability that it must be stricken outright.

And finally, at a minimum, the district court should affirm the district court's denial of Sodexo's motion to compel arbitration with respect to Count IV, his claim for benefits pursuant to § 502(a)(1)(B), as that claim is explicitly carved out of the arbitration provision that Sodexo seeks to enforce.

For these reasons, this Court should affirm the district court's order denying Sodexo's motion to compel arbitration.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1332(d). It issued an order denying Sodexo's motion to compel arbitration on July 25, 2023, and the company timely appealed on August 22, 2023. ER 2-11; 402-04. This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(C).

## ISSUES PRESENTED

I.  Did the district court correctly find that a plan sponsor's unilateral right to amend a welfare benefits plan does not extend to the insertion of an arbitration provision without consent, where ERISA's text provides that it does not abrogate or modify the requirements of any other federal law, and the FAA requires consent to arbitrate?

II.  Whether the district court correctly found that Platt did not consent to arbitration where California law requires an outward manifestation of assent to form a binding arbitration contract, and Platt did not affix his signature, check a box, click a button, or take any other action with respect to the provision in question?

4

III.   Whether the effective vindication doctrine bars enforcement of terms in Sodexo's arbitration provision that prospectively waive a plan participant's right to bring a representative action on behalf of a plan and thus recover plan-wide relief guaranteed under ERISA?

IV.   Whether a unilaterally inserted arbitration provision that prospectively waives multiple substantive statutory rights available to plan participants under ERISA, including by reducing the limitations period set by statute and preventing the recovery of attorneys' fees, should be stricken as unconscionable under California law?

V.   Whether an arbitration provision that expressly carves out certain claims from its scope—in this case, claims brought under ERISA § 502(a)(1)(B)—can nonetheless be used to compel the arbitration of a claim brought under that subsection?

## STATEMENT OF THE CASE

Plaintiff-Appellee Robert Platt is a long-time employee of Sodexo, Inc., a wholly owned subsidiary of Sodexo, S.A. 3-ER-353. Like many Americans, he receives health insurance through an employer-sponsored plan, in his case, the Sodexo Medical Plan ("the Plan"). 3-ER-354. Sodexo is both the sponsor and administrator of the Plan. 3-ER-

5

321. As with other participants, Sodexo required him to pay a monthly tobacco surcharge; in Platt's case, the surcharge was significant, totaling $1,200 per year. 3-ER-352, 3-ER-354-55.

Under the Affordable Care Act, premium differentials based on a health status-related factor are lawful only if they comply with a detailed set of prerequisites necessary for the operation of a compliant wellness program. 29 U.S.C. § 1182(b). One of these prerequisites is that participants who use nicotine be offered a "reasonable alternative standard"—usually participation in a smoking cessation program—by which they can receive the "full reward" for the plan year. 29 C.F.R. § 2590.702(f)(4)(iv). That is, if they complete the alternative program mid-year, they must be retroactively reimbursed for any surcharge payments made for that plan year. *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33163 (June 3, 2013). Another prerequisite is that plan sponsors must notify participants that such an alternative standard exists and must do so in any plan document that discusses the premium differential. 29 C.F.R. § 2590.702(f)(v). Sodexo failed both of these requirements.

6

## I.   Platt Files Suit Against Sodexo Due to Its Unlawful Nicotine Surcharge

Alleging that Sodexo's nicotine surcharge program does not meet these requirements, Platt filed suit against the company in December 2022 seeking the return of all nicotine surcharges as unlawful. Instead of providing the "full reward" for the plan year to nicotine users who completed the designated smoking cessation program as required by the Affordable Care Act, the company expressly informed participants that the surcharge would be removed only on a going-forward basis. 3-ER-352-53. And because Sodexo cannot avail itself of the statutory safe-harbor for wellness programs, Platt alleged that Sodexo failed to give the statutorily required notice of the reasonable alternative standard and unlawfully discriminated against participants based on a "health status-related factor" in violation of ERISA provision 29 U.S.C. § 1182. *See id.*

Based on these allegations, Platt's operative complaint asserts four claims against Sodexo, all under ERISA—a statute that Congress enacted to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citation omitted). It does so by including an "integrated

system of procedures for enforcement," set forth in § 502, and providing for six types of civil actions that may be brought to enforce ERISA's terms and recover different types of judgments. *Id*. at 208 (citation omitted).

Pursuant to this statute, Platt's four claims are either on behalf of himself and others similarly situated, or on behalf of the Plan. On behalf of Platt and the Class, Count I asserts a claim under ERISA § 502(a)(3) arising from Sodexo's violation of the statute in failing to provide a reasonable alternative program. 3-ER-367-68. Also on behalf of Platt and the Class, Count II likewise alleged a statutory violation under § 502(a)(3), this time for failing to provide requisite notice to plan participants. 3-ER-367-68. And in his First Amended Complaint filed on March 15, 2023, Platt added as Count IV a claim under ERISA § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan," premised on Sodexo's violation of the Plan's governing charter in implementing and assessing the nicotine surcharge. 3-ER-372-75. The requested remedy for each of these three counts is the return of the surcharges that Sodexo illegally collected from the plan participants. 3-ER-367-68, 3-ER-373.

In contrast to the first three counts, which are brought in Platt's individual capacity and on behalf of the putative class, he brought Count III "on behalf of the Plan" for Sodexo's misuse of the Plan's assets for its own benefit, in breach of its fiduciary duties to the Plan in violation of ERISA § 502(a)(2). 3-ER-370-72. Specifically, Count III alleges that Sodexo's improper collection of the nicotine surcharge reduced its own costs in funding the plan, resulting in Sodexo's unjust enrichment. 3-ER-370.

In response to Platt's Complaint, Sodexo moved to compel individual arbitration, relying on an arbitration provision it had added to the Plan document effective January 1, 2021. 3-ER-326-50. The provision: (1) requires participants to bring all ERISA claims pertaining to the Plan, other than a claim for benefits under ERISA § 502(a)(1)(B) (like Count IV of Plaintiff's operative complaint), in binding arbitration administered by the American Arbitration Association; (2) requires that claims "be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class"—or, as relevant here—"representative proceeding"; (3) requires each party to "bear their own legal fees and costs for all Arbitration Claims"; (5) provides that

"[n]o arbitration claim may be brought more than two years after the Arbitration Claim arises"; and (6) prohibits the disclosure of "the existence, contents, or results of any arbitration hereunder without prior written consent of the parties." 3-ER-306.

The provision carves out of its terms a claim for benefits under § 502(a)(1)(B) of ERISA, which it states "shall be brought" in the U.S. District Court for the District of Maryland "within three years." 3-ER-306.

## A. Platt never agreed to arbitrate his ERISA claims.

Platt was not aware this arbitration provision existed until after he filed suit. 2-ER-94.[1] It is undisputed that the version of the Plan that Platt entered in 2016 did not contain any provision purporting to require arbitration of ERISA claims. 2-ER-94. In January 2021, however, Sodexo unilaterally inserted the arbitration provision into the Plan. 3-ER-322, 3-ER-364-65.

---

[1] After he filed suit, counsel for Sodexo called Platt's counsel to inform them of the arbitration provision. 2-ER-94. After this, Platt searched his e-mail and found an e-mail from Sodexo Benefits Center. *Id*. Because Sodexo did not include this e-mail in its Excerpts of Record and because the district court relied on it, Platt supplements the record to include it. 1-SER-2-6.

10

Before the district court, Platt submitted an e-mail he received from "Sodexo Benefits Center" on October 7, 2022, linking to a "new" Summary Plan Description ("SPD") for the Plan in which he participated. 1-SER-6. It is undisputed that the body of the e-mail Platt received did not mention arbitration. *See* 2-ER-37; 1-SER-6. It is further undisputed that the hyperlink would have taken Platt to the "new" SPD, a 170-page document, on which the new arbitration provision does not appear until page 153. *See* 2-ER-35-37; *see also* 2-ER-94.[2]

Sodexo claimed that in February 2021, it had e-mailed Platt a link to a shorter document—a 25-page "Summary of Material Modifications" ("SMM")—that disclosed the newly-inserted arbitration provision. 3-ER-322 at ¶ 14. But Sodexo did not submit any such e-mail into the record before the district court, nor did it include one in the record before this Court. Indeed, when, at oral argument, the district court asked to see the purported e-mail linking to the SMM—even adjourning the hearing

---

[2] Notably, the only SPD Sodexo actually entered into the record did not even include an arbitration provision. *See* 2-ER-123-233. That SPD applied to plan year 2018, *see* 2-ER-124 (listing an effective date of 09/2018), and Sodexo first inserted an arbitration provision into Plan materials on January 1, 2021. 3-ER-322, 3-ER-364-65. That said, it remains undisputed that a 170-page SPD that included the full text of the arbitration provision was linked to the e-mail Sodexo sent to Platt. *See* 1-SER-3-6.

for several hours to permit Sodexo to produce it—Sodexo was only able to find an "exemplar" e-mail, rather than an e-mail that was actually sent to Platt. 2-ER-43 (admitting at oral argument "I don't know that it was submitted, the actual email."); 2-ER-47 (Sodexo's counsel explaining "[i]t's not marked as an exhibit, because this is the exemplar of the e-mail that was sent.").

And while Sodexo claimed that it also mailed Platt a physical copy of the SMM, 3-ER-322, Platt stated that he has no memory or indication of having received it. 2-ER-94. In any event, there is no dispute that no matter how Sodexo notified him about the Plan amendments, Platt took no action in response. 2-ER-94-95. It is undisputed that he did not sign any document, nor did he check a box, click a button, or otherwise do anything in any manner to indicate his agreement to be bound by the newly inserted arbitration provision. 2-ER-94-95; *see also* 2-ER-35. It is likewise undisputed that Sodexo did not notify Platt that he would be deemed to have accepted the arbitration provision by continuing to participate in the Plan. 1-SER-3-6; 2-ER-95.

**B.     Platt opposes Sodexo's motion to compel arbitration.**

In opposing Sodexo's motion to compel arbitration, Platt principally argued that since he did not consent to the provision, there was nothing for the company to enforce under the FAA. 2-ER-111-116. Specifically, he argued that California law of contract formation required some outward manifestation of assent before a party could be compelled to arbitrate a claim. 2-ER-113. He also maintained that because the provision contained several unenforceable waivers of his substantive rights, and because it was imposed on him without his knowledge, it should be stricken in its entirety as unconscionable. 2-ER-117-119. Further, because he had asserted an ERISA § 502(a)(2) fiduciary duty claim on behalf of the Plan for Plan-wide relief, he argued that the arbitration provision's representative action waiver requiring him to arbitrate only on an individual basis was unenforceable as to that claim because it prevented him from effectively vindicating rights guaranteed by ERISA. 2-ER-103-111. Finally, because the arbitration provision itself carved out claims under ERISA § 502(a)(1)(B) from its scope, Platt asserted that his claim brought under that section could not be compelled to arbitration. 2-ER-101-102.

## II.   The District Court Denies Sodexo's Motion to Compel Arbitration

After holding a hearing on Sodexo's motion to compel arbitration, the district court issued an order denying it in full on July 25, 2023. 1-ER-2-11. In so doing, the district court found that Sodexo had inserted the arbitration provision into Plan materials unilaterally without adequately notifying Platt or obtaining his consent. The district court based its decision on the only document that the record established "Defendants sent and Plaintiff received"—the October 2022 e-mail linking to a "new" Summary Plan Description. 1-ER-10. The district court found that "[n]othing in the email mentioned arbitration, relinquishment of the right to sue, or otherwise put recipients on notice that they would be subject to binding arbitration." 1-ER-3. And "clicking the hyperlink would have taken Plaintiff to a 170-page document, on which the arbitration clause appears on page 153." *Id.*

The district court further found that "Plaintiff did not sign the document, check a box, click a button, or otherwise take any action to manifest his agreement, but continued to participate in the Plan." 1-ER-4. The district court then addressed and dispatched a pair of arguments lodged by Sodexo against the application of California contract

formation principles. As to Sodexo's contention that it was authorized under ERISA to unilaterally insert new terms into a plan without the consent of plan participants, the district court found that the "legislative intent and historical jurisprudence underlying [that] power" demonstrated that it was intended to afford flexibility as to the substance of a benefit plan, and did not extend to terms unrelated to the provision of benefits, such as an arbitration clause. 1-ER-7-8.

Noting that federal courts apply "ordinary state-law principles" to determine whether an agreement to arbitrate'" was formed, 1-ER-6 (quoting *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017)), the court then turned to California contract law. One of the "fundamental principles of contract" under California law, the district court explained, is "'[m]utual manifestation of assent.'" 1-ER-8 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). The court found that Sodexo had not demonstrated that Platt had manifested assent to its arbitration clause as "[t]he email did not notify the reader that by continuing to participate in the Plan they would be entering into a new or modified agreement", and holding that "[w]ithout such notice, it is difficult to see how Plaintiff could have

15

agreed to the provision, be it by silence or by continued participation in the plan." 1-ER-10. The district court therefore declined to enforce the arbitration provision in any manner and did not have cause to take up any of Platt's alternative arguments. 1-ER-11.

This appeal followed.

## STANDARD OF REVIEW

This Court's review of the denial of a motion to compel arbitration, and "[t]he interpretation and meaning of contract provisions," is *de novo*. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). But all factual findings underlying such a ruling are reviewed only for clear error. *Id.* In particular, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted)). This Court may affirm on any basis supported by the record. *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016).

## SUMMARY OF THE ARGUMENT

I.    The district court correctly refused to compel Platt to arbitrate his claims because he never agreed to do so. Arbitration is strictly a matter of consent, and Platt took no action to manifest his agreement to be bound to Sodexo's arbitration provision. As a result, he had not formed a contract enforceable under state law, as the FAA requires. *Berman v. Freedom Fin. Network, Inc.,* 30 F.4th 849, 855 (9th Cir. 2022).

Contrary to Sodexo's assertion, there is no "ERISA exception" to this requirement for a consensual contract. While caselaw allows ERISA plan administrators to amend or modify plan terms without the agreement of participants, this ability has never extended beyond core plan functions, and has certainly never been held to authorize the unilateral insertion of an arbitration clause (which again, must take the form of a bilateral contract). Moreover, ERISA expressly precludes any construction that would alter or supersede any other federal law requirement, *see* 29 U.S.C. § 1144(d), including the FAA's requirement that arbitration provisions must comply with state-law contract formation principles.

II. Additional independent grounds support full or partial affirmance. One of these is that Sodexo's arbitration provision strips participants of the right to bring a representative action on behalf of the Plan and thus to recover plan-wide relief, even though the right to bring such a claim is a substantive feature of ERISA. *See* 29 U.S.C. § 1109; *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). In so doing, it violates the effective vindication doctrine and cannot be used to compel Platt's claim for breach of fiduciary duty on behalf of the Plan to individual arbitration. *See Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1106-07 (10th Cir. 2023); *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 506-07 (3d Cir. 2023).

III. Indeed, Sodexo's arbitration provision is replete with unenforceable terms. In addition to the representative action waiver, it improperly shortens the limitations period for ERISA claims and removes the statutory right for ERISA claimants to recover their attorneys' fees. The short arbitration provision is thus so thoroughly permeated with unconscionable terms that it must be held

18

unenforceable pursuant to California law. *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005-06 (9th Cir. 2021).

IV.    Finally, even if Sodexo's arbitration provision were deemed enforceable, it expressly carves out claims brought under ERISA § 502(a)(1)(B) from its scope. Platt has asserted a valid claim under that subsection and thus, even by Sodexo's own terms, that claim cannot be compelled to arbitration.

## ARGUMENT

## I.    ERISA Does Not Supersede the FAA's Requirement of Contractual Consent to Arbitrate

Sodexo inserted the arbitration provision while amending the Plan's written materials. In so doing, though, it overlooked one of the FAA's bedrock principles: it requires consent of the parties to arbitrate. This requirement arises from the FAA's text, which provides that a "written provision in any . . . *contract*" or "*an agreement* in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (emphasis added). In other words, "the FAA imposes certain rules of fundamental importance, including that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Courts consistently re-affirm this bedrock principle. *See Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent.") (cleaned up); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (cleaned up); *Munro v. Univ. of S. California*, 896 F.3d 1088, 1092 (9th Cir. 2018) ("We cannot, of course, compel arbitration in the absence of an agreement to arbitrate; to do so would be to defeat 'the FAA's primary purpose.") (citation omitted).

Sodexo, however, argues that ERISA implicitly eviscerates the FAA's long-established tenet that arbitration requires agreement between parties, *i.e.*, bilateral consent. Appellants' Opening Brief ("App. Br.") 25-27. It then goes on to argue that even if consent were required, Platt *did* consent by continuing to participate in the plan, or that it was the Plan's consent, not his, that was necessary. *Id.* 28-30. These arguments are untenable under ERISA's plain text, the well-

established canons of statutory interpretation, and the record of this case.

## A. There is no "ERISA exception" to the FAA's requirement for a consensual contract.

Despite the oft-stated requirement that "arbitration is strictly a matter of consent" between the parties, Sodexo's first argument is that "Platt's consent [to arbitrate] is of no moment." App. Br. 20. The company bases this argument on a line of cases establishing the right of an ERISA plan sponsor to unilaterally modify the terms of a welfare benefits plan without the participants' consent. App. Br. 25-26 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) and *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 442-44 (1999)).

This right evolved not from what ERISA affirmatively protected, however, but rather from what it did *not* protect. Specifically, courts noted that (1) ERISA does not create any substantive entitlement to employer-provided health benefits, but instead supplies baseline rules for the implementation and maintenance of such a plan; (2) Congress did not impose a requirement that welfare-benefits plans create vested rights, due in part to a concern that it would inhibit employers from creating such plans; and (3) ERISA's definition of "fiduciary" did not

21

encompass a plan sponsor's actions in amending a welfare-benefits plan. *See Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995); *Adams v. Avondale Indus. Inc.*, 905 F.2d 943, 947 (6th Cir. 1990); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). For these reasons, courts recognized that "[e]mployers or other plan sponsors are generally free under ERISA . . . to adopt, modify, or terminate welfare plans." *Curtiss-Wright*, 514 U.S. at 78.

Sodexo argues that this unilateral amendment right is "nearly unfettered" and that "[t]he district court employed a faulty analysis to create an exception to that rule—that such unilateral authority does not extend to the addition of an arbitration provision." App. Br. 25.[3]

### 1. ERISA's plain text precludes Sodexo's expansive reading of its right to amend plan terms.

Both ERISA's plain text and canons of statutory interpretation, however, demonstrate that the district court's analysis was correct. As a threshold matter, ERISA's text includes no provision related to

---

[3] In its brief, Sodexo later characterizes the district court as having ruled that "unilateral plan amendments are unlawful." App. Br. 28. That is flatly incorrect. The district court recognized a plan sponsor's right to unilaterally amend a plan but found that that right related to its substantive benefits provisions and did not extend to an arbitration clause. 1-ER-8.

arbitration. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000) ("There is no provision of ERISA or its implementing regulations that specifically governs the administration of arbitration clauses.").

Further, while ERISA preempts any *state* law that "relate[s] to any employee benefit plan," 29 U.S.C. § 1144(a), as to federal law, it provides the opposite. It specifies that "[n]othing" in ERISA's terms "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). "On its face, this is a strong, comprehensive, express statement that ERISA is not to be read as displacing by implication any pre-existing federal legislation. Congress' declaration incorporates and goes beyond the normal canon that repeals by implication are not favored." *Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 275–76 (D.C. Cir. 1980). Indeed, this language establishes a clear rule of priority, explicitly precluding any construction of ERISA that would alter or interfere with another federal law requirement.

But such a construction is precisely what Sodexo urges this Court to adopt. The company claims that a plan sponsor's unilateral authority to amend a welfare benefits plan must be interpreted to supersede the

FAA's requirement of consent to arbitrate. This argument faces a "stout uphill climb," as "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic Sys*., 584 U.S. at 510. Sodexo provides no foothold, from any source, to support that climb.

The company points to no language in ERISA relating to arbitration, let alone abrogating the FAA's foundational tenet of consent to arbitration in the context of plan amendments. *See Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 514 (2018) ("Congress has likewise shown that it knows how to override the Arbitration Act when it wishes."). And even the unilateral right to amend an ERISA plan is not guaranteed by the text of the statute, but rather a policy judgment derived from it. Thus, while Sodexo argues that ERISA must be interpreted to implicitly abrogate the FAA's foundational precept of agreement (*i.e.*, consent of the parties) as the basis of arbitration in the context of a plan amendment, the opposite is true: ERISA leaves that requirement in place. *See Epic Sys.,* 584 U.S. at 511 (refusing "to infer a clear and manifest congressional command to displace the [FAA]").

The district court's finding that ERISA affords a plan sponsor the power to unilaterally amend substantive, core aspects of a welfare benefits plan, but that that power does not extend to the unilateral addition of an arbitration clause is consistent with both § 1144(d) of ERISA the well-established principles if statutory interpretation. 1-ER-8.

> **2. Sodexo cites no case finding that ERISA abrogates the FAA's requirement of consent to arbitrate.**

Given ERISA's explicit prohibition on the abrogation or abridgment of pre-existing federal law, such as the FAA, it is unsurprising that the cases Sodexo cites stand simply for the unremarkable proposition that a plan sponsor can amend core *plan terms*—changing a plan's funding mechanism, the benefits provided, the insurance carrier, and the like—without the participants' sign-off. Those plan terms are specified in 29 U.S.C. § 1102, which sets forth the "requisite" and "optional" features that a plan must include. None of these plan features relate to arbitration, dispute resolution, or anything of the sort. *See* 29 U.S.C. § 1102.

Indeed, studying ERISA's legislative history, the Supreme Court noted that one of the reasons an employer enjoys "flexibility . . . to amend or eliminate its welfare plan" is that it "encourages them to offer more generous benefits at the outset, since they are free to reduce benefits should economic conditions sour. If employers were locked into the plans they initially offered, 'they would err initially on the side of omission.'" *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515–16 (1997) (citation omitted); *see also Curtiss-Wright*, 514 U.S. at 78 (noting that plan sponsor's right to amend emerges from fact that ERISA "does not create any substantive entitlement to employer-provided health benefits," and that Congress did not impose vesting requirements on welfare-benefits plans).

In line with this legislative history, all the cases Sodexo cites relate to amendments to statutorily-specified plan features.[4] *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 435–36 (1999)

---

[4] Per the statute, the requisite features of a plan include written terms that "provide a procedure for establishing and carrying out a funding policy and method," that "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan," that "provide a procedure for amending such plan," and that "specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b). The "optional features" grant flexibility with respect to who may serve as the plan's fiduciary. 29 U.S.C. § 1102(c).

(amendment changing and increasing participants' funding obligations, a plan feature specified in 29 U.S.C. § 1102(b)(1)); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 464-65 (7th Cir. 1998) (amendment changing and reducing the amount of pension payments, a plan feature specified in 29 U.S.C. § 1102(b)(4)); *Lockheed Corp. v. Spink*, 517 U.S. 882, 885 (1996) (amendment changing plan benefits and eligibility, plan features specified in 29 U.S.C. § 1102(b)(4)); *Curtiss-Wright*, 514 U.S. at 75–76 (amendment terminating benefits, a plan feature specified in 29 U.S.C. § 1102(b)(4)).

None of these cases establishes that a plan sponsor may unilaterally amend a welfare benefits plan to add an arbitration provision, and the district court thus correctly concluded that because "an agreement to arbitrate [does not] concern[] . . . the substance of a benefit plan," it is not within a plan sponsor's unilateral amendment right. 1-ER-8.

Other courts addressing the issue have agreed, finding that amending a plan to add an arbitration provision does not fall within the ambit of a sponsor's unilateral right to amend, but must instead comply with the FAA's state-law contract formation requirement. *See Hensiek*

*v. Bd. of Directors of Casino Queen Holding Co., Inc.*, 514 F. Supp. 3d 1045, 1051–53 (S.D. Ill. 2021) (refusing to enforce arbitration clause inserted into ERISA plan because amendment did not comply with Illinois contract formation principles); *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*, 2021 WL 4133622, at *5 (D. Del. Sept. 10, 2021), *aff'd on other grounds*, 72 F.4th 499 (3d Cir. 2023) (finding that courts must "look to state law when determining whether the parties have a valid arbitration agreement" when the defendant had inserted an arbitration clause into an ERISA plan).

Sodexo warns of "widespread negative consequences" if plan administrators are required to obtain consent from participants for every change they make to plan terms, such as imposing "a higher deductible at the start of a new plan year." App. Br. 31. But Platt's challenge is limited to the plan sponsor's ability to unilaterally impose an *arbitration* provision via amendment. As explained above, a deductible increase is a change to a statutory plan feature specified in 29 U.S.C. § 1102(b), and thus can be made by the plan sponsor on its own initiative. For that matter, imposing an arbitration clause remains

achievable in the ERISA context, so long as it is founded upon a contract enforceable under state law.

In sum, in declining to compel arbitration, the district court did not turn "ERISA and the FAA on their heads," as Sodexo claims. App. Br. 31. Instead, by finding that the "power to unilaterally modify ERISA plans does not reach arbitration agreements," 1-ER-8, the district court correctly synchronized the requirements of two federal statutes, as the plain text of ERISA and the well-established canon of statutory interpretation required it to do.

## II. Sodexo Did Not Secure Platt's Consent to Arbitrate

The FAA's requirement of an agreement to arbitrate thus remains firmly in place. And to determine whether an enforceable agreement to arbitrate exists, courts "apply state-law principles of contract formation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

Sodexo, as the party seeking to compel arbitration, bears the burden of showing the formation of a state-law contract by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014). Moreover, "the liberal federal policy

regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (cleaned up). After engaging in a thorough and exacting review of the factual record and California law on contract formation, the district court correctly found that Sodexo had not secured the necessary consent to arbitrate the present dispute, and thus properly declined to compel arbitration.

## A. Platt did not manifest assent and thus there was no contract.

Under California law, "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).[5] "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Berman v. Freedom Fin. Network, Inc.,* 30 F.4th 849, 855 (9th Cir. 2022). But "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to

---

[5] The district court correctly held that California law applied to the question of contract formation. 1-ER-8; *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Sodexo has not challenged that finding on appeal.

engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* (quoting Restatement (Second) of Contracts § 19(2) (1981)).

Along these lines, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Knutson*, 771 F.3d at 565 (quoting *Windsor Mills, Inc.* v. *Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972). Mutual assent is assessed by "an objective standard applied to the outward manifestations or expressions of the parties." *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (cleaned up).

### 1. The district court's factual findings were not clearly erroneous.

Contrary to Sodexo's claim, the district court's factual findings as to whether Platt had manifested assent to Sodexo's arbitration clause were not "clear error." App. Br. 31.

The only e-mail that is in the record on this subject is the one that Platt submitted, consisting of an October 2022 e-mail from "Sodexo Benefits Center" to Platt linking to a Summary Plan Description

31

("SPD"). 1-SER-6. It is undisputed that the body of that e-mail did not mention arbitration; that the link would have taken Plaintiff to an SPD, a 170-page document, on which the arbitration provision does not appear until page 153; and that Platt did not sign the SPD or any other amendment. *See* 2-ER-33-37; *see also* 1-SER-6. Nor did the e-mail ask him to take any action other than to view the document. 1-SER-3-6. Sodexo does not challenge the district court's findings as to these undisputed facts. 1-ER-10.

Instead, Sodexo tries to muddy this record, claiming that the district court erred in finding that the e-mail Platt placed in the record and on which the court based its order was the only one he received. App. Br. 32. But Sodexo did not create a record that any other e-mail, other than the one Platt submitted, was sent to or received by him. This is demonstrated by the fact that Sodexo has not included any e-mail attaching or linking to a Summary of Material Modifications ("SMM") in the record before this Court, App. Br. 32 (no record citation to referenced e-mail, only to a standalone SMM).

The district court thus correctly based its findings on the only e-mail the record established that "Defendants sent and Plaintiff

received"—the October 2022 one that Platt submitted. 1-ER-10; *see also* 1-SER-6. There is no basis on which to charge the district court with a factual finding that is "illogical, implausible, or without support," as would be required for a finding of clear error. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014).

As to Sodexo's claim that the district court did not note in its order that Platt also received a hard copy of the SMM in the mail, the district court acknowledged this document at oral argument, discussing its contents extensively with counsel. 2-ER-48-54. But while Sodexo claimed it sent Platt this document, Platt did not recall receiving it. 3-ER-322; 2-ER-94. The district court's reliance on the only document that the record established Platt received is a factual finding entitled to deference. *See Nguyen*, 763 F.3d at 1175 (citation omitted) (factual findings underlying a ruling on a motion to compel arbitration reviewed only for "clear error").

## 2. Platt took no outward action indicating his agreement to be bound to a contract.

Notably, Sodexo limits its challenge on appeal to the district court's factual findings as to the notice Platt received on the Plan's new arbitration provision; it does not challenge the district court's

interpretation or application of California law to those factual findings (which, as explained above, were correct). App. Br. 31-32.

Nor could it. As this Court recently explained, a party seeking to enforce electronically disseminated terms must show that the offeree has "take[n] some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856; *see also Nguyen*, 763 F.3d at 1179 (holding that website that does not prompt users "to take any affirmative action to demonstrate assent" cannot give rise to an enforceable agreement). It is undisputed that Platt took no such action.

And even if the record showed that Platt had taken some affirmative action—which it does not—it would manifest assent to the terms of the arbitration provision in the SPD only if he had been *"explicitly advised that the act of clicking will constitute assent* to the terms and conditions of an agreement." *See Berman*, 30 F.4th at 857 (emphasis added); *see also Lopez v. Dave, Inc.*, No. 22-16915, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023) (finding no reasonably conspicuous notice because "the text in the Dave app does not mention

arbitration and only refers to a 'TOS.'"). It is undisputed that Platt was not so advised.

### 3. Platt's continued participation in the plan was not consent.

Unable to meet California requirements for contract formation, Sodexo searches for a stand-in for Platt's consent. It thus cites stray language from one of this Court's unpublished summary dispositions stating that "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." App. Br. 30 (quoting *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512-13 (9th Cir. 2019) ("*Dorman II*").[6]

But just last year, this Court—in a published and authoritative decision—flatly rejected the "continued participation" theory of contractual assent on which Sodexo relies. In *Jackson v. Amazon.com,*

---

[6] It is notable that the case to which *Dorman II* cites for the proposition that participation in a plan constituted consent to arbitration, *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723-24 (9th Cir. 2000), was not in the context of an amendment to a plan, but a participant's original entry into it. The plaintiff in that case thus would have had to take the affirmative step of enrolling in the plan, including its arbitration provision. *Id.* at 723 (explaining that "[a]fter enrolling in the Plan," plaintiff submitted his medical bills to the plan for payment). That contrasts with the present case, in which it is undisputed that Platt took no action to signify consent to the Plan's updated terms which included an arbitration agreement.

*Inc.*, Amazon sought to bind its drivers to a new "terms of service" agreement that it sent them via e-mail, contending that they "assented by continuing to perform deliveries." 65 F.4th 1093, 1099 (9th Cir. 2023). But the Court disagreed, in large part because there was "no evidence that the alleged notice Amazon sent to drivers in 2019 *informed them that continuing to complete deliveries or use the app* would bind drivers to the new terms." *Id.* at 1100 (emphasis added); s*ee also Berman*, 30 F.4th at 857 (user must be "explicitly advised that the act of clicking will constitute assent to the terms"). Likewise, Sodexo did not advise Platt that he would be bound to the new terms by continuing to participate in the Plan. 1-SER-3-6; *see also* 2-ER-95. Based on California law, the district court thus correctly found that "[w]ithout such notice," Platt could not have consented to the amendments, "be it by silence or continued participation in the plan." 1-ER-10.

### 4.    The Plan's "consent" is no substitute for Platt's.

Sodexo's final attempt to manufacture consent fares no better. The company posits that, because ERISA § 502(a)(2) claims belong to the Plan rather than any individual participant, it is the Plan's consent, not Platt's, that counts. App. Br. 28-29. But even if true, this argument

would not carry the company very far, as only one of Platt's four ERISA claims is brought pursuant to § 502(a)(2). 3-ER-367-73. This means that Sodexo's argument would implicate at most that single claim. 3-ER-367-75.[7]

In any event, Sodexo's argument fails for two reasons. First, circuit precedent dictates that the individual plaintiff's consent is required *even for § 502(a)(2) claims*, notwithstanding the fact that they seek to recover on behalf of the plan. In *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), the Court considered "whether an ERISA-plan participant can be compelled to arbitrate an ERISA claim brought on behalf of the plan where the plan—but not the participant—has signed an arbitration agreement." *Id.* at 1099.[8] Because the representative

---

[7] Sodexo thus implicitly concedes that Counts I and II, brought under § 502(a)(3), are claims that would require consent of the individual plan participant. Unlike those under the preceding provision, these claims are individual in nature. *See Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996) (§ 502(a)(3) "cover[s] individual relief"); *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 n.2 (9th Cir. 2020) ("[w]hile § 1109(a) [by way of § 502(a)(2)] gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach," "§ 1132(a)(3) is broad enough to cover individual relief.") (cleaned up).

[8] This Court's later decision in *Munro v. University of Southern California*, 896 F.3d 1088 (9th Cir. 2018) also considers the question of

bringing the claim on behalf of the plan had not consented to arbitrate, the Court answered in the negative and declined to compel arbitration. Here, too, the representative bringing the claim on behalf of the Plan—Platt—did not consent to arbitrate.

Second, Sodexo has not established the Plan's consent to the arbitration provision. That is because Sodexo is the plan sponsor and administrator, which is a distinct legal entity from the Plan. *See* 3-ER-321 ("Sodexo sponsors and administers The Sodexo, Inc. Medical Plan."); *see also Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267, 1280, n.16 (D. Kan. 2004), *aff'd* 393 F.3d 1119 (10th Cir. 2004) ("Numerous courts have recognized that an ERISA plan constitutes a legally autonomous entity which is separate from the employer who sponsors the plan.").[9]

---

arbitration a § 502(a)(2) claim, but in the context of interpreting the scope of an employee's agreement to arbitrate. *See id.*, at 1094 ("[T]he claims asserted on behalf of the Plans in this case fall outside the scope of the arbitration clauses in individual Employees' general employment contracts.").

[9] *See also* 29 U.S.C. § 1002(3) ("'plan' means an employee welfare benefit plan"); *id.* § 1002(16)(B) ("plan sponsor" mean "the employer in the case of an employee benefit plan established or maintained by a single employer.")

Sodexo points to no evidence that the Plan assented to the amendments, including the arbitration provision. Indeed, while Sodexo's Plan is "e-signed" by an individual with a Sodexo e-mail address, Sodexo has not established her relationship to the Plan, or her authority to enter an agreement on behalf of the Plan. 3-ER-307, 3-ER-319. In similar situations, courts have rejected attempts to blur the distinctions, set forth in ERISA's statute, between these separate legal entities. *See Hawkins v. Cintas*, 32 F.4th 625, 636-37 (6th Cir. 2022) (rejecting argument that "because the sponsor has consented to arbitration . . . the Plan has also consented").

Indeed, even in *Berkelhammer*—the recent Third Circuit case on which Sodexo largely pins its argument—there was a clear record of the Plan's consent to arbitration before the district court, including a contract bearing the signature of the authorized representative of the Plan, along with those of representatives of the third-party investment firm hired to act as an independent fiduciary. *Berkelhammer v. ADP TotalSource Grp., Inc.*, Case No. 22-1618, Doc. 17 at 276. Sodexo has not established a similar record in this case, and there is thus no basis on which this Court may conclude that the Plan consented to arbitration.

*See Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009) (finding issue waived when there was "no indication that [the key document supporting the argument] was part of the record in the district court.").[10]

\* \* \*

In sum, the FAA, which predates ERISA by nearly forty years, requires the formation of a contract that is valid under state law. Lacking such an agreement, Sodexo has no basis on which to compel arbitration. This should end the Court's inquiry. But even if the Court finds that a valid agreement to arbitrate was reached, the terms of that provision give rise to three additional, independent bases for full or partial affirmance of the district court's decision declining to compel arbitration.

First, the representative action waiver included in Sodexo's arbitration provision prevents a plan participant from exercising the right, guaranteed by ERISA, to bring a claim on behalf of the Plan for

---

[10] In any event, even if Sodexo had established consent, Platt's § 502(a)(2) claim cannot be compelled into individual arbitration for another, independent reason. As explained below, the terms of the arbitration provision prevent Platt from effectively vindicating his claims under that section and cannot be enforced. *See infra* Section III.

40

plan-wide recovery. As several of this Court's sister circuits have recognized, because this type of waiver precludes a plan participant from effectively vindicating a right that ERISA protects, it is unenforceable. And the arbitration provision limits a plan participant's substantive rights in other ways, too, such as by limiting the recovery of legal fees and costs, in contravention of ERISA's fee-shifting provisions. Indeed, Sodexo's short arbitration provision is so rife with unconscionable terms that it cannot be reformed and must be stricken in its entirety. Finally, because the arbitration provision expressly carves out the claim asserted in Count IV, the district court must be affirmed as to that claim as well.

Though the district court did not reach these issues, they were fully presented by the parties. This Court may consider "alternative ground[s] for affirming" and "can affirm on any ground supported by the record." *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016). This is particularly true where, as here, an issue is "purely legal" in nature. *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110–11 (9th Cir. 2020). Each is addressed in turn below.

41

## III. The Effective Vindication Doctrine Prohibits Enforcement of Sodexo's Representative Action Waiver

By limiting plan participants to only "individual capacity" suits and precluding any "representative proceeding," 3-ER-306, Sodexo's arbitration provision attempts to strip them of substantive rights guaranteed by § 502(a) of ERISA, which protects a plan participant's right to bring a representative action on behalf of the Plan for breach of fiduciary duty.[11]

This runs afoul of the "effective vindication" doctrine, which invalidates contractual terms that act as a "'prospective waiver of a party's right to pursue statutory remedies.'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 472 U.S. 614, 637, n.19 (1985)). As this Court has explained, though a party "may agree to an arbitral forum for the resolution of statutory disputes," that "in no way suggests that they may be forced by those with dominant economic power to surrender the statutorily-mandated rights and benefits that Congress intended them to possess." *Graham Oil Co. v. ARCO Prod. Co., a Div. of Atl. Richfield Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994). This Court should thus affirm

---

[11] Section 502 of ERISA is codified at 29 U.S.C. § 1132. Section 409 of ERISA is codified at 29 U.S.C. § 1109. The statute is cited both ways in this section.

the district court's denial of Sodexo's motion to compel arbitration of Count III.

Before detailing Platt's argument on this point, however, a note on terminology. Throughout its argument on effective vindication, Sodexo conflates two materially different terms: "class" and "representative" actions, extensively arguing that "class action waivers in arbitration agreements are valid." App. Br. 40-45. But Platt is not challenging the arbitration provision's *class* action waiver; he challenges the provision's *representative* action waiver. And in a recent case, the Supreme Court drew a clear distinction between the two types of actions. The Court explained that while class action waivers in arbitration agreements are generally enforceable because class procedures are inconsistent with traditional bilateral arbitration, *representative* actions in which a plaintiff represents a single absent principal—like Platt does here, by representing the Plan—can be consistent with bilateral arbitration. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657-58 (2022)

("single-agent, single-principal representative actions" do not materially deviate from "traditional arbitral practice").[12]

As such, the Court explained, the FAA does not "mandate the enforcement of waivers of representative capacity." *Id*. at 657. Combining this principle with the bedrock one that courts need not "enforce contractual waivers of substantive rights and remedies," *id*. at 653, this means that courts need not—and should not—enforce a representative action waiver that would work to deny a plaintiff substantive statutorily-guaranteed rights and remedies. Because this is precisely what Sodexo's representative action waiver does, it cannot be enforced.

## A.   ERISA grants participants the right to represent the plan to recover its losses.

ERISA § 502(a)(2) empowers a plan participant to sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). In turn, § 409(a) makes fiduciaries "personally liable to make good to [the] plan any losses to the plan resulting from" a

---

[12] The Supreme Court's distinction between representative and class actions thus renders Sodexo's exclusive reliance on cases regarding class action waivers—such as *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013)—inapposite. App. Br. 40-41.

fiduciary breach and requires fiduciaries to "restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan[.]" 29 U.S.C. § 1109(a). In other words, § 502(a)(2) authorizes plan participants to sue plan fiduciaries and recover not just their own personal losses, but to secure relief on behalf of the plan as a whole, including via removal of the fiduciary. A plan participant's right to bring such a suit on behalf of the Plan against a fiduciary is non-waivable. 29 U.S.C. § 1110(a) ("any provision . . . which purports to relieve a fiduciary from responsibility or liability . . . shall be void as against public policy.")

Securing relief for the Plan is what Plaintiff seeks through his § 502(a)(2) claim. He alleges that Sodexo collected the unlawful surcharge to offset its own contribution costs, thus resulting in the company retaining ill-gotten profits. 3-ER-370-72. Those illegal profits belong to the Plan as an entity, and not to individual participants. 3-ER-371 ("Sodexo is liable to make good to the plan all losses to the plan resulting from its breaches."). Indeed, when a participant seeks relief under § 502(a)(2), as Plaintiff did here, the claim is necessarily "brought in a representative capacity on behalf of the plan as a whole." *Mass.*

*Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). In fact, "§ 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).[13]

**B.  Sodexo's arbitration provision impermissibly constrains participants' statutory right to recover all plan losses in a representative action.**

Sodexo's arbitration provision states that claims "shall be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." 3-ER-306. On its face, this language bars Platt from bringing a fiduciary duty claim under ERISA § 502(a)(2), which can only be brought in a representative capacity. *Russell*, 473 7 U.S. at 142 n.9; *LaRue*, 552 U.S. at 256.

The class action cases Sodexo cites in arguing that the effective vindication doctrine "is not implicated" are inapposite. App. Br. 40-41. For example, Sodexo cites to the Supreme Court's enforcement of class action waivers in cases such as *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). *See id.* But in *American Express*, for

---

[13] An exception to this holding is if the fiduciary breach "impair[s] the value of plan assets in a particular individual's account." *LaRue*, 552 U.S. at 248. As explained further below, that is not the case here, and Sodexo does not argue otherwise.

example, the Supreme Court found that the effective vindication doctrine was not implicated because "the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim." 570 U.S. at 233. In other words, while the statute provided a remedy, it did not guarantee the right to a procedural mechanism such as a class action that would render the remedy affordable or accessible.

Here, by contrast, Sodexo's arbitration provision does not simply make securing a remedy unaffordable; rather, it effectively eliminates the relief itself. Indeed, ERISA provides for both a plan-wide remedy and the underlying procedural mechanism for obtaining it—the right to proceed in a representative capacity on behalf of the Plan as a whole. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). Because the remedy inures to the Plan as a whole, requiring a plan participant to proceed only in his individual capacity necessarily impedes that remedy. *See Burnett v. Prudent Fiduciary Servs. LLC*, No. CV 22-270-RGA-JLH, 2023 WL 387586, at *8 (D. Del. Jan. 25, 2023), *report and recommendation adopted sub nom.* 2023 WL 2401707 (D. Del. Mar. 8, 2023), *aff'd sub. nom.*, 2023 WL 6374192 (3d Cir. Aug. 15, 2023) ("Unlike the class action waivers at issue in *Italian Colors* and *Epic Systems*, the arbitration

47

provision here does not merely purport to change the manner in which Plaintiffs' individual claims are decided; rather, it purports to change the nature of the substantive remedy provided by the statute. It deprives Plaintiffs of the right to seek the statutory remedy of plan-wide monetary relief, and it is therefore unenforceable."),

In short, the Plan's arbitration provision does not merely provide a different forum with different procedural rules for Platt to vindicate his statutory rights. The plain language of the arbitration provision *eliminates* his ability to proceed under § 502(a)(2) and obtain remedies that § 409 explicitly authorizes. To the extent that Platt seeks to recover on behalf of the Plan for breach of fiduciary duty—as he does in Count III, *see* 3-ER-370-72—the arbitration provision works an unlawful prospective waiver, and therefore must yield.

## C. This Court's sister circuits have refused to enforce arbitration provisions that would similarly obstruct the right to obtain plan-wide relief.

Considering similar arbitration provisions in the context of § 502(a) claims for breach of fiduciary duty, several of this Court's sister circuits have agreed.

48

In the last year, the Tenth Circuit has held that a provision in an ERISA plan's arbitration provision stating that "[e]ach arbitration shall be limited solely to one Claimant's Covered Claims . . ." was unenforceable, because "many of [the plaintiff's] claims are brought under § 1132(a)(2) and seek forms of relief that would benefit the Plan as a whole, rather than [the plaintiff] individually." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1106-07 (10th Cir. 2023). The Tenth Circuit concluded that the arbitration provision was "written in a manner intended to foreclose any such plan-wide relief" and was therefore unenforceable under the effective vindication doctrine. *Id.* at 1107.

The Third Circuit followed suit, holding in *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, that because ERISA § 502(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole" and they authorize equitable and remedial relief that inures to the plan as a whole, an arbitration clause that limited the plaintiff to individual recovery was unenforceable. 72 F.4th 499, 506-07 (3d Cir. 2023). Pursuant to the effective vindication doctrine, the court found that

49

because the "waiver purports to prohibit [these] statutorily authorized remedies," it and the statute "cannot be reconciled," and "the provision must give way to the statute." *Id.* at 507.

Along these same lines, the Seventh Circuit recently held that a similar arbitration provision was unenforceable because it worked a "prospective waiver of a party's right to pursue statutory remedies," and thus "the effective vindication exception applie[d]." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 621 (7th Cir. 2021) (cleaned up). In so holding, it concluded that "the plain text of § 1109(a) and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes." *Id.*

Similarly, the Second Circuit noted that requiring individual arbitration of an ERISA fiduciary duty claim would potentially violate the rule against "forbidding the assertion of certain statutory rights." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184-85 (2d Cir. 2021). And the Sixth Circuit has found that an ERISA fiduciary duty claim is inherently representative in nature, concluding that the "weight of authority and the nature of § 502(a)(2) claims suggest that these claims belong to the plan, not to individual plaintiffs." *Hawkins v.*

50

*Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 564, 214 L. Ed. 2d 335 (2023).[14]

Unable to avoid the weight of this caselaw, Sodexo suggests that its arbitration provision "does not contain any of the language found problematic" in those cases, such as language "prohibiting claimants from seeking or receiving any relief that might also provide 'benefits or monetary or other relief' to any other participant." App. Br. 33-34 (citation omitted). In other words, Sodexo argues that because its provision does not explicitly limit the scope of the relief, but just the procedural mechanism for obtaining it, its clause is distinguishable. But the language Sodexo uses would secure the same result, as it states that any arbitration "shall be brought in a party's individual capacity, and

---

[14] Numerous district courts are in accord. *See, e.g.*, *Cedeno v. Argent Tr. Co.*, 2021 WL 5087898, at *4 (S.D.N.Y. Nov. 2, 2021) (holding that "[d]espite the ERISA-conferred right to a plan-wide remedy, [the defendant's arbitration clause] provides that the plaintiff cannot recover losses to the entire Plan", and thus, that "provision is invalid and unenforceable because it purports to limit the available remedies that ERISA explicitly provides."); *Burnett v. Prudent Fiduciary Servs. LLC*, 2023 WL 387586, at *6 (D. Del. Jan. 25, 2023), *report and recommendation adopted sub nom.* (refusing to enforce provision because "what the statute provides, the arbitration provision takes away: it says that beneficiaries cannot sue on behalf of the Plan and that they cannot recover plan-wide damages.").

not as a plaintiff . . . in any purported . . . representative proceeding." 3-ER-306.

If arbitration claimants cannot bring "representative proceedings" and are limited to proceeding only in their "individual capacities," they necessarily cannot recover the sort of plan-wide relief provided for under ERISA § 502(a)(2). S*ee also Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (when a plan participant acts as a representative of the plan, any relief he obtains "inures to the benefit of the plan as a whole."). In other words, in the context of an ERISA § 502(a) claim, the representative mechanism for obtaining relief and the remedy are necessarily linked.

Sodexo effectively admits that it is not possible for a plaintiff proceeding individually to recover on a plan-wide basis, referring in its brief to the "*individual* recovery Platt . . . could obtain under Section 502(a)(2)." App. Br. 35 (emphasis added). But Sodexo does not explain what would constitute an individual recovery for Platt on his § 502(a) claim; nor could it, as for claims involving medical plans like this one, there's no such thing as an "individual" recovery on a § 502(a)(2) claim, *LaRue*, 552 U.S. at 256, and any recovery must necessarily be "on

behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *see also Munro v. Univ. of S. California*, 896 F.3d 1088, 1094 (9th Cir. 2018) ("recovery under ERISA § 409(a) is recovery singularly for the plan").[15]

Further, Platt is not seeking an individual recovery for Count III: he has specifically plead that Sodexo collected the unlawful nicotine surcharge to offset its contribution costs, and that those illegal profits belong to the Plan as an entity. 3-ER-371 ("Sodexo is liable to make good to the plan all losses to the plan resulting from its breaches."); *see also Munro,* 896 F.3d at 1094 ("The relief sought demonstrates that the Employees are bringing their claims to benefit their respective Plans across the board, not just to benefit their own accounts as in *LaRue.*"); *Hawkins*, 32 F.4th at 632-33 ("There is no indication that Plaintiffs seek relief for actions that affected them individually, as in *LaRue* . . . Th[e] alleged breaches do not impact the Plaintiffs specifically, the harm (and the recovery) is to the Plan."). The Plan's purported limitation on a participant's capacity to bring a suit in a representative

---

[15] This is demonstrated by the remedies authorized by the statute, which include equitable and injunctive relief, including the removal of the fiduciary. 29 U.S.C. § 1109. Plainly, a fiduciary plainly cannot be removed or replaced with respect to only a single plaintiff.

capacity thus works the same effect as a limitation on remedies guaranteed by ERISA and is thus unenforceable.

### D. *Dorman II* does not compel a different result.

Attempting to rebut Platt's position on this point and others throughout its brief, Sodexo relies on an unpublished disposition issued by this Court in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) ("*Dorman II*"), a case holding that certain § 502(a)(2) claims could be compelled to individual arbitration.[16] App. Br. 42-45. As explained above, this holding conflicts with the published findings of at least five other Circuits. Further, this case is neither precedential due to its "unpublished" designation, nor is it apposite to the present case.

Even if *Dorman II* were binding precedent, its findings arose out of a distinct context that is inapplicable here. Specifically, while the

---

[16] In *Dorman I*, a published and precedential decision that was issued on the same day, the Court found that ERISA claims could be arbitrable, overturning Circuit precedent on the issue. *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1111-1112 (9th Cir. 2019). In other words, the Court specifically split its decision in the case into precedential and non-precedential portions. See *Dorman*, 780 F. App'x at 512 n** ("This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3."); C.A. 9 Rule 36-3 (unpublished rulings are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

present case involves a group health plan, *Dorman II* arose in the context of a different type of benefits plan—a defined contribution plan. Indeed, the outcome of *Dorman II* hinged on the rationale that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a *defined contribution plan like that at issue.*" 780 F. App'x at 514 (citing *LaRue*, 552 U.S. at 128) (emphasis added). It then concluded that "*LaRue* stands for the proposition that a *defined contribution plan* participant can bring a § 502(a)(2) claim for the plan losses in her own individual account" and thus "arbitration on an individualized basis . . . is consistent with *LaRue.*" *Id.* (emphasis added).

While Sodexo does not acknowledge the difference between the plan type in *Dorman II* and at-issue here, App. Br. 42, courts consistently recognize distinctions to be material. *See LaRue*, 552 U.S. at 253-56 (explaining the distinction between a "defined benefit plan" and a "defined contribution plan" and why those differences resulted in varying types of authorized recoveries); *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1026, n.6 (9th Cir. 2009) (citing *LaRue,* 128 S.Ct. at

1025) (noting that even cases "involving defined benefit plans are not necessarily controlling in cases involving defined contribution plans.").

Unlike the defined contribution plans like the one in *Dorman II*, participants in group health plans, like Platt, do not have individual "accounts" that can be refunded when a fiduciary wrongfully depletes or misuses plan assets. *See Smith v. Med. Benefit Administrators Grp., Inc.*, 639 F.3d 277, 283 (7th Cir. 2011) ("[A] group health insurance plan . . . typically holds no assets in trust for any individual participant.").[17]

Further, as noted above, Platt does not plead an individual claim; he pleads a claim seeking restoration of illegal profits to the Plan. 3-ER-370-72. It is undisputed that Platt's claim and its plan-wide remedy are

---

[17] Likewise, the other cases relied upon by Sodexo for the proposition that a § 502(a)(2) claim can be compelled to individual arbitration all explicitly followed *Dorman II* and involved defined contribution retirement plans. *Robertson v. Argent Tr. Co.*, 2022 WL 2967710, at *1 n.1 (D. Ariz. July 27, 2022) ("Plaintiff's plan is a defined contribution plan"); *Avecilla v. Live Nation Ent., Inc.*, 2023 WL 5354401, at *1 (C.D. Cal. Aug. 7, 2023) ("Plaintiffs are former employees of Live Nation and former participants in Live Nation's 401(k) Savings Plan, a defined contribution plan"). They are thus of marginal relevance to cases like this one involving medical plans. And even as to defined contribution plans, *Dorman II*'s interpretation of *LaRue* rests on shaky ground, and has been called into question by other courts. *See, e.g., Burnett*, 2023 WL 387586, at *7 ("I disagree with *Dorman*, and other courts have too.") (citing cases).

authorized by ERISA and may not be waived. 29 U.S.C. §§ 1109-10. And as this Court has recognized, any such relief must necessarily inure to the Plan as a separate entity. *See Munro,* 896 F.3d at 1094; *see also Hawkins*, 32 F.4th 625 ("Ultimately, the Plaintiffs are seeking Plan-wide relief through a statutory mechanism that is designed for representative actions on behalf of the Plan.").

In sum, the company's representative action waiver unquestionably strips Platt of his statutory right under ERISA to represent the Plan and pursue remedies that inure to the Plan. It is therefore void, regardless of whether the arbitration provision is deemed an otherwise enforceable agreement.[18]

---

[18] Sodexo argues that Platt's effective vindication argument must fail because there is no "contrary congressional command" to the FAA at play in this case. App. Br. 41. To be clear, Platt does not suggest otherwise. Rather, the Supreme Court has held that effective vindication and contrary congressional command are entirely separate doctrines that operate independently of each other. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Platt has asserted the former, but not the latter, in arguing that the representative action waiver is unenforceable.

**IV.    Sodexo's Arbitration Provision is Unconscionable or Otherwise Legally Invalid in Multiple Respects and is Therefore Unenforceable.**

The representative action waiver is far from the only unenforceable term in Sodexo's arbitration provision; indeed, multiple provisions work to improperly limit Plan participants' statutorily guaranteed rights. In its briefing before the district court, Platt identified three offending clauses that are unconscionable or otherwise legally infirm under California law. *See* 3-ER-306.

As this Court recently affirmed, even an arbitration contract agreed to by both parties must be stricken if it contains multiple legally defective provisions and those provisions cannot be severed from the rest of the agreement. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005-06 (9th Cir. 2021).

**A.    Unconscionability defenses apply to Sodexo's arbitration provision.**

Sodexo does not defend the substance of its arbitration provision before this Court. Instead, it argues that the provision is exempt from state-law contract defenses like unconscionability due to ERISA preemption. App. Br. at 36-38 (citing district court cases). But as noted above, ERISA's preemption provision contains two clauses: one

58

providing for preemption of state laws that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), and another that specifically precludes preemption of other federal laws. *Id*. § 1144(d).

Section 2 of the FAA expressly provides that arbitration provisions may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, the FAA explicitly incorporates state law defenses, thus preserving all "generally applicable contract defenses, such as fraud, duress, or *unconscionability*." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis added). To find that state law unconscionability defenses were inapplicable in the ERISA context would thus preempt a provision of *federal* law, which ERISA explicitly prohibits. *See* 29 U.S.C. § 1144(d).

The cases on which Sodexo relies on this point—*see, e.g., Robertson v. Argent Tr. Co.*, 2022 WL 2967710, at *4-5 (D. Ariz. July 27, 2022); *Avecilla v. Live Nation Ent., Inc.*, 2023 WL 5354401, at *5 (C.D. Cal. Aug. 7, 2023)[19]—fail to grapple with the effect of the FAA's savings provision, and thus should be afforded no weight. Indeed, this Court

---

[19] The Central District of California's decision in *Avecilla v. Live Nation* is presently on appeal to this Court. Appeal No. 23-55725.

recently assumed, without deciding the issue, that state-law unconscionability could apply in the ERISA context. *See Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120, 1130 (9th Cir. 2022) ("[a]ssuming without deciding" that plan terms could be stricken as unconscionable, but finding provision did not violate unconscionability principles).

In any event, ERISA plan provisions are still subject to federal common law contract rules, which in turn incorporate "the core principles of the common law of contract that are in force in most states." *United States v. Nat'l Steel Corp.*, 75 F.3d 1146, 1150 (7th Cir. 1996); *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) ("While we interpret an ERISA plan under federal common law, we may use principles of state common law to guide our analysis."). Either way, ERISA plan sponsors cannot evade review of unconscionable terms.

### B. Sodexo's arbitration provision is permeated with unconscionable terms and cannot be enforced.

Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a). "[U]nconscionability has both a procedural and substantive element, the former focusing on

60

oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 6 P.3d 669 (2000) (cleaned up). While procedural and substantive unconscionability must both be present for an agreement to be unenforceable, "they need not be present in the same degree." *Id.* Instead, a "'sliding scale is invoked,'" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (cleaned up).

### 1. Sodexo's arbitration provision contains multiple substantively unconscionable terms.

Sodexo's terms include three substantively unconscionable clauses, which together permeate the provision and render it unenforceable in its entirety. 2-ER-95 at ¶¶ 11-13.

Three clauses are of the type routinely found to be substantively unconscionable by California and federal courts, as they purport to restrict or waive rights guaranteed by ERISA. The first of these is the representative action waiver, which is invalid for the reasons discussed extensively in Section III. Next, the arbitration clause purports to fix the limitations period at two years for all claims subject to arbitration,

*see* 3-ER-306, even though ERISA provides a period of between three to six years for breach of fiduciary duty claims. 29 U.S.C. § 1113. Courts have routinely held that contractual attempts to shorten the statutory limitations periods—including for fiduciary duty claims under ERISA— are unenforceable. *See, e.g., Kramer v. Smith Barney*, 80 F.3d 1080, 1085 (5th Cir. 1996).

Next, Sodexo's terms state that "[t]he parties must bear their own legal fees and costs for all Arbitration Claims." 3-ER-306. But ERISA permits a successful plaintiff to recover "reasonable attorney's fee and costs," *see* 29 U.S.C. § 1132(g)(1), and courts have long held that contractual "[p]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230–31 (3d Cir. 2012); *see also Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1091, 1096 (9th Cir. 2009) ("provision requiring each party to bear its own attorney fees" was void and contributed to the unconscionability of the entire arbitration agreement). The waiver of these recoverable items is therefore invalid.

Moreover, there can be no real dispute that Sodexo's arbitration provision is also procedurally unconscionable. By law, a contractual provision is procedurally unconscionable if it was the product of "oppression or surprise due to unequal bargaining power." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Id.* (citation omitted). Here, it is beyond dispute that Sodexo's arbitration clause was adhesive in nature, as Platt was not even apprised of its existence, let alone given the opportunity to negotiate it. *Id.* at 1261 (noting that a contract of adhesion is one that is "imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it.").

### 2. The unconscionable provisions permeate the agreement and are not severable.

When faced with a contract with unconscionable terms, courts are permitted to either sever the offending provisions or strike the clause altogether. But as this Court recognized in *Lim*, "[s]everance is not

permitted if the court would be required to augment the contract with additional terms." 8 F.4th at 1005. Thus "the entire provision is unenforceable if the only way to cure the unconscionability is in effect to rewrite the agreement." *Id*. This is so because merely "[s]evering the unenforceable provisions of an arbitration clause . . . would allow an employer to draft one-sided agreements and then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance." *Id*.

Here, Sodexo's arbitration provision is so thoroughly permeated by unconscionability—indeed, significantly more so than the clause at issue in *Lim*—that it could not possibly be reformed without a complete rewrite. *See Lim*, 8 F.4th at 1006 (striking down an entire arbitration agreement because it contained three offending provisions, "the cost-splitting, fee-shifting, and Texas venue provisions"). Were the three offending clauses to be severed, the rest of the provision would collapse in on itself. And because the Court cannot augment terms or redraft the provision, it must find it unenforceable in its totality. *Id*.[20]

---

[20] This conclusion is not altered by the possible presence of a severability clause, as "[t]he existence of [a] severability clause[] does not change the fact that where an agreement is permeated by

**V.    Platt's Claim for Benefits Under ERISA § 502(a)(2) is Expressly Carved Out of Sodexo's Arbitration Provision, and Therefore Cannot Be Compelled to Arbitration**

Finally, regardless of how the Court resolves the overarching issues concerning enforcement of Sodexo's arbitration provision more broadly, it must at a minimum affirm as to Count IV, which asserts a claim for benefits under ERISA § 502(a)(1)(B). *See* 3-ER-372-75. That is so because Sodexo's arbitration provision states unequivocally that "a claim for benefits under Section 502(a)(1)((B)" is outside its scope. *See* 3-ER-306. Instead, it provides for such claims to be brought in federal court. *Id.*

That this claim cannot be compelled to arbitration is not a close call. It is well-settled that courts must give effect to language carving out certain types of claims from a mandatory arbitration provision, as "[i]t is the language of the contract that defines the scope of disputes subject to arbitration," *see E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279,

---

unconscionability, a court will not sever the unlawful provisions." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1045 (N.D. Cal. 2022). Sodexo's governing Plan Document (a document that that it does not even contend to have been made accessible to Platt or other participants) contains an overall severability clause, whereas its Summary Plan Description and Summary of Material Modifications—that is, the documents on which it has sought to compel Platt to arbitration—do not. 2-ER-123-233; 3-ER-235-60.

289 (2002), and parties remain free to exclude certain claims "from the scope of an agreement to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

That is what Sodexo did here: it elected to carve out claims under ERISA § 502(a)(1)(B) from the scope of its arbitration provision—a sensible choice given that these claims are not permissibly subject to mandatory arbitration under the Department of Labor's regulations. *See* 29 C.F.R. § 2560.503-1(c)(4). It is Sodexo's burden to demonstrate that the arbitration provision encompasses the dispute at issue. *See, e.g., Knutson v. Sirius XM Radio Inc.,* 771 F.3d 559, 565-66 (9th Cir. 2014).

Faced with the clear language of the agreement, Sodexo instead argues that Platt's claim is not a true claim for benefits, presumably because it seeks to recover for premium expense overcharges, rather than non-payment for a claim. App. Br. 35-36.[21] To the contrary, courts

---

[21] In fact, two of the four cases cited by Sodexo purporting to support its position, *Wireless Warehouse, Inc. v. Boost Mobile, LLC*, 2010 WL 891329 (C.D. Cal. Mar. 10, 2010) and *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), *see* App. Br. 37, not only do not involve express carve-outs, they also *refused to compel arbitration* to boot. The third, *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328 (C.D. Cal. 2017), *see id.*, directly support's Platt's argument, as explained

have long held that plaintiffs who have overpaid for the cost of maintaining coverage in violation of the terms of the plan have a cognizable claim for benefits under ERISA § 502(a)(1)(B). *See, e.g., Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474-75 (9th Cir. 1997) (affirming summary judgment for plaintiffs seeking recovery of portion of copayment under ERISA § 502(a)(1)(B)); *Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1338 (11th Cir. 2006) ("not having to pay a deductible is a benefit of a plan", and as such, "[a]n action to recover overstated deductibles" is "properly brought under ERISA § 502(a)(1)(B)").

In any event, Sodexo may not unilaterally re-cast Platt's well-pleaded claim to argue that it falls within the scope of the arbitration provision. *See Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1342 (C.D. Cal. 2017), *aff'd sub nom. Perez v. DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018) (rejecting defendant's attempt to "recast [plaintiff's] claims" as ones that fell within the scope of the clause).

---

below. And in the fourth, *Duke v. Luxottica U.S. Holdings Corp.*, *see id.* at 27-28, the plaintiff did not even bring the type of claim carved out from the agreement. 2023 WL 6385389, at *9 n.2 (E.D.N.Y. Sept. 30, 2023)

Count IV is thus expressly outside the scope of Sodexo's arbitration provision, and thus cannot be compelled to arbitration, regardless of whether the remainer of the terms are enforceable.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision denying Sodexo's motion to compel arbitration in its entirety.

Dated: February 22, 2024        Respectfully submitted,

*/s/ Alexander T. Ricke*
George A. Hanson
Alexander T. Ricke
Caleb J. Wagner
Yasmin Zainulbhai
Jason L. Hartley
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
*hanson@stuevesiegel.com*
*ricke@stuevesiegel.com*
*wagner@stuevesiegel.com*
*zainulbhai@stuevesiegel.com*

Jason L. Hartley
**HARTLEY LLP**
101 W. Broadway, Suite 820
San Diego, CA 92101
Tel: 619-400-5822
*hartley@hartleyllp.com*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit via the appellate CM/ECF system. Counsel for Defendants-Appellants are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 22, 2024         */s/ Alexander T. Ricke*
                             Counsel for Plaintiff-Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** <u>No. 23-55737</u>

I am the attorney or self-represented party.

**This brief contains 13,849 words,** including no words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ *Alexander T. Ricke*</u>    **Date** <u>February 22, 2024</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**    *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | No. 23-55737

The undersigned attorney or self-represented party states the following:

○ I am unaware of any related cases currently pending in this court.

◉ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Alexander T. Ricke | **Date** | February 22, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17** *New 12/01/2018*